### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF PUERTO RICO

ABDERRAMAN BRENES-LAROCHE

     Plaintiff,

         v.                                CIV. NO. 08-1815 (PG)

PEDRO TOLEDO DAVILA, ET AL.

     Defendants.

### OPINION AND ORDER

Plaintiff Abderraman Brenes-La Roche brought this action for damages against several supervisory and on-the-field officers of the Puerto Rico Police Department ("PRPD") under 42 U.S.C. § 1983 for constitutional violations of the Fourth and Fifth Amendments allegedly stemming from an unreasonable seizure, the use of excessive force, and summary punishment without due process of law. Plaintiff also pleads supplementary claims under Puerto Rico law for assault and battery, false arrest, and restriction of liberty. Before the Court are the police officer defendants' Motion to Dismiss (Docket No. 7) for failure to state a claim under FED. R. CIV. P. 12(b)(6) as well as Plaintiff's Opposition (Docket No. 10).[1] For the reasons set forth below, the Court **GRANTS in part and DENIES in part** the Motion to Dismiss.

### I. Factual Background

---

[1] Defendants are: Pedro Toledo Davila, Superintendent of the PRPD; Jose Caldero Lopez, Assistant Superintendent for Criminal Investigations; Benjamin Rodriguez Torres, Assistant Superintendent for Field Operations; Walter Rivera Ortiz, Commander of the San Juan Tactical Operations Unit ("SJTOU"); Eric Serrano Lnu, SJTOU Sergeant; Merky Vasquez Santos, SJTOU officer; and John Doe, whose name is unknown but is believed to have the paternal surname Torres and badge number 28142. Also named as defendants are three insurance companies denominated A, B, and C, covering the police officers against the risk of negligence and civil rights actions.

Civ. No. 08-1815(PG)                                                    Page 2

     The Court draws the following facts from Plaintiff's Complaint and takes them as true for purposes of resolving Defendants' Motion to Dismiss.

     On or about August 4, 2007, Plaintiff attended a protest at a construction project known as Paseo Caribe as a "legal observer" assigned by the *Colegio de Abogados de Puerto Rico*.   He accompanied a group of demonstrators, including his son, to the fourth floor of a parking building at the site, where they were met with about a dozen members of the PRPD's San Juan Tactical Operations Unit ("SJTOU").   The officers closed off all means of egress from the fourth floor and announced that the demonstrators would have to leave but only by one of two means: either jumping from the fourth floor or running through a wall of baton-wielding police.   Plaintiff and the demonstrators sat down on the floor whereupon the officers "immediately began to indiscriminately beat the seated demonstrators." (Compl. ¶ 28.)

     More specifically, defendant Merky Vazquez Santos ("Vasquez") hit Plaintiff's son with the metal tip of his baton; Plaintiff was jabbed in his mid-section with the metal tip of a baton belonging to either Vasquez or another officer whose name is yet unknown ("Doe"); and Plaintiff received a sharp blow on his right wrist from Doe while Vasquez and other officers hit and kicked him in various parts of his body. (Compl. ¶¶ 29-35.)  Vasquez, Doe, and other officers, acting in concert, used physical force to confine him. Plaintiff continued to receive sharp blows as he left the building through an opening allowed by the officers.   As a result of the physical injuries sustained, Plaintiff suffered an oblique bone fracture, bruises, and soft tissue swelling on his left[2] wrist.

     In addition to the individual officers who directly participated in the

_____

     [2] We note a discrepancy between Plaintiff's narrative that he was hit on his right wrist but that his orthopedic surgeon's MRI disclosed a bone fracture on his left wrist. However, we must take the Plaintiff at his word for purposes of resolving Defendant's Motion to Dismiss and do not at this point cast doubt upon his allegations of injury.

beatings, Plaintiff posits that supervisory officers Pedro Toledo, Jose Caldero, Benjamin Rodriguez, Walter Rivera, and Eric Serrano (collectively, "supervisory officers") are also liable for their participation in deploying the SJTOU the day of the beatings while being aware of the SJTOU's use of unlawful and excessive force.  Plaintiff states that Toledo, Caldero, and Rodriguez deployed the San Juan Tactical Operations Force on August 4, 2007 "in reckless disregard or callous indifference to the likelihood that it would use unlawful and excessive force at Paseo Caribe." (Compl. ¶ 53.)  He believes and alleges that Serrano communicated from the scene with the aforementioned, as well as with Rivera, and obtained their orders to proceed.  Thus, Plaintiff argues that all of the supervisory officers knew that the SJTOU would use unlawful force but actively engaged them anyway, and therefore, proximately caused his injuries.

Furthermore, Plaintiff states that the supervisory officers were aware of the SJTOU's custom, practice, and policy of removing their identification when using unlawful force, but failed to enforce regulations requiring police to display their identification when in uniform.  Additionally, Plaintiff claims that Toledo, Caldero, Rodriguez, and Rivera failed to properly train and supervise their subordinates and to discipline them for using unlawful force to disperse demonstrators.  These acts and omissions, Plaintiff believes, also proximately caused his injuries.

All the named officer defendants filed a Motion to Dismiss under FED. R. CIV. P. 12(b)(6) for failure to state a cognizable claim under the Fourth and Fifth Amendments and thus under 42 U.S.C. § 1983 ("section 1983").  Their main argument surrounds the failure of Plaintiff to establish any direct involvement by Defendants with the damages caused to Plaintiff, especially since the supervisory officers "were not in [sic] the fourth floor of the multi-level parking" the day of the alleged beatings. (Mot. Dismiss 6.)  As for defendant Vasquez, whom Plaintiff alleges kicked him in various parts of

his body and possibly jabbed him in his midsection with a baton, Defendants argue that only Doe directly injured Plaintiff.  Furthermore, because the demonstrators were trespassing on private property, Defendants argue that the officers were dispatched to remove the protestors who knew they could be arrested for said acts and who thus provided the officers with probable cause for their arrest, resulting in no unreasonable restriction of liberty or unjustified seizure.

Seeking to dismiss the suit against the supervisory officers, Defendants argue that under the case law supervisors cannot be held liable simply under a theory of respondeat superior.  Rather, they may only be held liable for their own acts or omissions if these are affirmatively linked to the subordinate's unconstitutional behavior (e.g. by encouragement or gross negligence).  Defendants posit that "Plaintiff pleaded only vague and conclusory allegations that . . . [the supervisory officers] . . . failed to train and supervise their subordinates . . . which is not enough to establish a claim of supervisory liability." (Mot. Dismiss 9.)  Defendants submit that the Complaint has not set forth any facts in support of its accusations against the supervisory officers.

Moreover, Defendants proceed to argue why Plaintiff has failed to state a cognizable claim under the Fourth and Fifth Amendments.  They state that they did not use unreasonable force and thus did not violate the Fourth Amendment because the demonstrators chose to disobey police orders to leave the private property and instead sat down in refusal of their orders.  A reasonable response by a police officer, therefore, would have been to remove the trespassers.  They also argue that it is a "normal custom of the Tactical Operations Unit to stand shoulder to shoulder when they are dispatched anywhere and that in itself does not amount to the deprivation of any constitutional right." (Mot. Dismiss 10.)

With respect to the Fifth Amendment, Defendants state that the Due

Process Clause only applies to federal government actions, not state or local government.  Since Defendants are not federal actors, the argument goes, any Fifth Amendment claim must be properly dismissed.  At the very least, Defendants say that excessive force claims should be analyzed under the Fourth Amendment's reasonableness standard under the prevailing case law.  Finally, Defendants argue that even if the Court found that Plaintiff's rights had been violated, they are entitled to qualified immunity against liability.

## II. Rule 12(b)(6) Standard of Review

"The general rules of pleading require a short and plain statement of the claim showing that the pleader is entitled to relief. . . .  This short and plain statement need only give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Gargano v. Liberty Intern. Underwriters, Inc., 572 F.3d 45, 48 (1st Cir. 2009) (internal citations and quotation marks omitted).

Motions to dismiss brought under Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6) are subject to the same standard of review. See Negron-Gaztambide v. Hernandez-Torres, 35 F.3d 25, 27 (1st Cir. 1994).  When ruling on a motion to dismiss for failure to state a claim, a district court "must accept as true the well-pleaded factual allegations of the complaint, draw all reasonable inferences therefrom in the plaintiff's favor, and determine whether the complaint, so read, limns facts sufficient to justify recovery on any cognizable theory." Rivera v. Centro Medico de Turabo, Inc., 575 F.3d 10, 15 (1st Cir. 2009) (citing LaChapelle v. Berkshire Life Ins. Co., 142 F.3d 507, 508 (1st Cir. 1998)). Courts "may augment the facts in the complaint by reference to (i) documents annexed to the complaint or fairly incorporated into it, and (ii) matters susceptible to judicial notice." Gagliardi v.

<u>Sullivan</u>, 513 F.3d 301, 306 (1st Cir. 2008) (internal citations and quotation marks omitted).

"Yet [the Court] need not accept as true legal conclusions from the complaint or naked assertions devoid of further factual enhancement." <u>Maldonado v. Fontanes</u>, 568 F.3d 263, 266 (1st Cir. 2009) (<u>citing</u> <u>Ashcroft v. Iqbal</u>, 129 S. Ct. 1937, 1960 (2009)). Although a complaint attacked by a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) "does not need detailed factual allegations, . . . a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007) (internal citations and quotation marks omitted).

Moreover, "even under the liberal pleading standard of Federal Rule of Civil Procedure 8, the Supreme Court has . . . held that to survive a motion to dismiss, a complaint must allege a plausible entitlement to relief." <u>Rodriguez-Ortiz v. Margo Caribe, Inc.</u>, 490 F.3d 92, 95 (1st Cir. 2007) (<u>citing</u> <u>Twombly</u>, 550 U.S. 544 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Iqbal</u>, 129 S. Ct. at 1949 (<u>citing</u> <u>Twombly</u>, 550 U.S. at 556). That is, "[f]actual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact) . . . ." <u>Twombly</u>, 550 U.S. at 555 (internal citations and quotation marks omitted). "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." <u>Iqbal</u>, 129 S. Ct. at 1950.

**III. Discussion**

**A. Supervisory Liability under Section 1983**

Section 1983 is a vehicle through which individuals may sue state officers for depriving them of federally assured rights.  See Gagliardi v. Sullivan, 513 F.3d 301, 306 (1st Cir. 2008).  A claim under section 1983 has two essential elements: (1) the defendant must have acted under color of state law, and (2) his or her conduct must have deprived the plaintiff of rights secured by the Constitution or by federal law.  See id. The second element requires the plaintiff to show that the defendant's conduct was the cause in fact of the alleged deprivation. Id.; see also Colon-Andino v. Toledo-Davila, 634 F. Supp. 2d 220, 231 (D.P.R. 2009) (describing the same analysis as three separate elements).

Under section 1983, a supervisory official may be held liable for his subordinates' behavior only if (1) his subordinates' behavior results in a constitutional violation; and (2) the official's action or inaction was affirmatively linked to that behavior such that it could be characterized as supervisory encouragement, condonation or acquiescence or gross negligence amounting to deliberate indifference.  Pineda v. Toomey, 533 F.3d 50, 54 (1st Cir. 2008).  Supervisory liability may be found either where the supervisor directly participated in the unconstitutional conduct or where his or her conduct amounts to tacit authorization.  Colon-Andino, 634 F. Supp. 2d at 232 (citing Camilo-Robles v. Zapata, 175 F.3d 41, 44 (1st Cir. 1999)). Plaintiff must show each individual defendant's personal involvement in the constitutional violation because there is no respondeat superior liability under section 1983.  See id. (citing Pinto v. Nettleship, 737 F.2d 130, 132 (1st Cir. 1984)).

A supervisor need not have actual knowledge of the offending conduct to be liable if he or she formulates a policy or engages in a custom that

leads to the challenged occurrence.  See Colon-Andino, 634 F. Supp. 2d at
232 (citing Maldonado-Denis v. Castillo-Rodriguez, 23 F.3d 576, 582 (1st
Cir. 1994)).  A supervisor may be liable for the foreseeable consequences
of the subordinate's offending conduct if he or she would have known of it
but for his deliberate indifference or willful blindness, and if he or she
has the power and authority to alleviate it.  Id. (internal quotation marks
and citations omitted); see also Maldonado v. Fontanes, 568 F.3d 263, 275
(1st Cir. 2009) (noting that supervisory liability for deliberate
indifference will be found only if it would be manifest to any reasonable
official that his conduct was very likely to violate an individual's
constitutional rights)).

     Before we proceed with our analysis of constitutional rights
deprivations, we must discern which of the defendants are swept under
section 1983 liability pursuant to the case law on supervisory liability
outlined above.  All of the officers were acting under color of state law
as uniformed officers who possessed power by virtue of state law and whose
alleged wrongdoings were made possible only because they were clothed with
the authority of state law.  Taking the Complaint's factual allegations as
true, Defendants Vasquez and Doe, who physically harmed Plaintiff, were
clearly causes in fact of his injuries and thus of any appurtenant rights
deprivations.

     We also find that Plaintiff pleads sufficient facts to pin section
1983 liability upon all of the supervisory officers.  As the Complaint's
description of the parties and factual allegations show, the supervisory
officers acts and omissions were affirmatively linked to their
subordinates' unconstitutional behavior such that they could be
characterized as either encouragement, condonation, acquiescence, or gross
negligence amounting to deliberate indifference.  We do not yet know which
of these categories of misconduct would most appropriately describe

Defendants' acts or omissions given our undeveloped factual record.
However, we must credit Plaintiff for setting forth a factual scenario in
which each individual defendant personally participated in the deprivation
of rights, or at the very least, formulated a policy or engaged in a custom
that led to a deprivation that was foreseeable and that each had power and
authority to alleviate.  This is not a case as in <u>Colon-Andino v. Toledo-
Davila</u>, 634 F. Supp. 2d 220 (D.P.R. 2009), where the Complaint accused
supervisory officers whose names only appeared in the description of the
parties but "nowhere else in the complaint, therefore no facts are alleged
linking them to the alleged violations." 634 F. Supp. 2d at  233.  Nor is
it the case of a supervisory officer like the PRDP's Superintendent being
sued simply by the plaintiff "stating the elements of supervisory
liability" but offering:

> no details regarding what policy [he] enacted or ignored that would
> have prevented the constitutional violations; no details regarding how
> or why [he] should have or did know about the alleged violations; nor
> details regarding how training or retraining or supervision or any of
> his responsibilities as a supervisor would have or could have stopped
> the alleged violations from occurring.

<u>Id.</u>

This is a case of a purported policy of the SJTOU's using excessive
force, authorized by the unit's supervisors all the way up the chain of
command, and directly ordered or permitted by them on the day of the
alleged beatings.  As stated in the factual background of this opinion and
as reiterated in Plaintiff's Opposition to the Motion to Dismiss, each
Defendant is implicated with having participated in the SJTOU's
constitutional violations, either by consulting, ordering, or deliberately
neglecting the unit's foreseeable use of excessive force. (<u>See</u> Opp. to Mot.
Dismiss 6-10.)  By way of example, Plaintiff states that:

> (1) "[D]efendant Serrano consulted [the deployment] decision up the
> chain of command before dispatching the officers and ordering them to
> remove the protestors by force." (Compl. ¶ 20.)

> (2) "Defendants Toledo, Caldero, Rodriguez, Rivera and Serrano were,

at all relevant times, aware that Tactical Operations police remove their identification before using unlawful force in order to avoid responsibility for their actions. These supervising officials nonetheless fail to enforce regulations requiring police to display their identification when in uniform, thereby encouraging the practice and offering immunity to members of the unit who use unlawful force." (Compl. ¶ 47.)

(3) "Defendants Serrano[,] . . . Rivera Ortiz and Rodriguez Torres . . . failed to act to avoid resort to excessive force by agents they knew, or should have known, had removed their identification." (Compl. ¶ 48.)

(4) "Defendants Toledo, Caldero, and Rodriguez deployed the [SJTOU] on August 4, 2007, in reckless disregard or callous indifference to the likelihood that it would use unlawful and excessive force at Paseo Caribe." (Compl. ¶ 53.)

(5) "It is believed, and therefore alleged that Defendant Serrano communicated from the scene of the events described in the Complaint with each of the defendants Toledo, Caldero, Rodriguez, and Rivera, kept them informed of developments, consulted with them, and obtained their orders or permission to proceed as he did." (Compl. ¶ 54.)

(6) "The decision by defendants Toledo, Caldero, Rodriguez and Rivera to dispatch Sgt. Serrano and the [SJTOU] to the Paseo Caribe location . . . predictably resulted in the use of unlawful force against Plaintiff." (Compl. ¶ 55.)

(7) "Defendants Toledo, Caldero, Rodriguez and Rivera all failed to properly train and supervise their subordinates and discipline them for using unlawful force to disperse the demonstrators and others in the past. . . ." (Compl. ¶ 65.)  "The failure of [these defendants] . . . to supervise, train and discipline [officers] they knew or should have known were involved in multiple incidents involving the use of unlawful force in the past . . . together with the failure to enforce regulations requiring officers to display their identification at all times, were a proximate cause of Plaintiff's injuries." (Compl. ¶ 72.)

(8) "The defendants all conspired with one another and other unidentified members of the [SJTOU] to authorize, permit, facilitate and commit the acts described above, knowing that it constituted excessive force in violation of the Constitution of the United States as well as the Constitution and laws of Puerto Rico." (Compl. ¶ 70.)

Thus, here we are not presented with a case of wholly conjectural or hypothetical factual allegations that merely repeat the formulaic or conclusory language of supervisory liability, requiring dismissal under the standards set forth by the Supreme Court in Iqbal.  We find that Plaintiff has pled sufficient facts to make out a plausible entitlement to relief

Civ. No. 08-1815(PG)                                          Page 11

under the First Circuit's formulation of supervisory liability, even if such has been called into question by the Supreme Court's new pleading standards.[3]  We are cognizant of the difficulty described by Plaintiff in identifying who is responsible for what, especially when the SJTOU allegedly removed their badges and attacked Plaintiff in a coordinated group effort.  We understand the difficulty faced by many civil rights litigants in Plaintiff's position who are not armed with sufficient facts, more likely to be found in Defendants' possession, to survive <u>Iqbal's</u> pleading standard at this pre-discovery stage of litigation.  We hope the Circuit will clarify the supervisory liability standard to guide us in this task.  For now, we heed the Supreme Court's suggestion to "draw on [our] judicial experience and common sense."  <u>Iqbal</u>, 129 S. Ct. at 1950.  We deny Defendants request to dismiss the claims against the supervisory officers to allow discovery on these important factual issues that need to be resolved in order to determine more precisely each individual defendant's role, and thus liability, in violating Plaintiff's constitutional rights.


   **B. Fourth Amendment - Unlawful Detention**


     Plaintiff argues that Defendants violated his constitutional right to be free from unjustified seizure of his person due to the unreasonable restriction of his liberty because they "had no warrant for his arrest, no probable cause for his arrest, and no legal cause or excuse to detain or

---

     [3]  We note that footnote 7 of the First Circuit's studied opinion <u>Maldonado v. Fontanes</u>, 568 F.3d 263 (1st Cir. 2009), written by Chief Judge Lynch, casts doubt on the standard for holding a public official liable for damages under section 1983 on a theory of supervisory liability.  <u>See</u> 568 F.3d at 275. <u>Maldonado</u> did not render a final verdict on this question because the court found that the plaintiffs had not pled facts sufficient to make out a plausible entitlement to relief under the Circuit's previous standard for supervisory liability.

seize his person." (Compl. ¶ 62.)  Plaintiff submits that he and the other demonstrators were not trespassing because they were peacefully protesting "on what they believed were public lands belonging to Puerto Rico's maritime terrestrial zone, in violation of the laws and regulations of Puerto Rico." (Compl. ¶ 15.)  We reiterate, however, that at the motion to dismiss stage, we need not accept Plaintiff's legal conclusions and may consider "documents incorporated by reference in [the complaint], matters of public record, and other matter susceptible to judicial notice."  See Giragosian v. Ryan, 547 F.3d 59, 65 (1st Cir. 2008).  Therefore, we may refer to the judicially noticeable fact and public records showing that the Paseo Caribe construction site was indeed private property on August 4, 2007, and was subsequently confirmed to be so by the Puerto Rico Supreme Court in San Geronimo Caribe Project, Inc. v. Estado Libre Asociado de Puerto Rico, 2008 TSPR 129 (P.R. 2008).  In light of this observation, we proceed with our discussion of whether Plaintiff was unlawfully detained or seized.

"The seizure of a person occurs when, by means of physical force or a show of authority, an officer restrains the liberty of a person and such person submits to the restriction feeling that he or she is not free to leave." Estate of Bennett v. Wainright, 548 F.3d 155, 167 (1st Cir. 2008) (citing United States v. Holloway, 499 F.3d 114, 117 (1st Cir. 2007)).  A detention at the hands of a police officer constitutes a seizure and must be adequately justified under the Fourth Amendment.  See Morelli v. Webster, 552 F.3d 12, 19 (1st Cir. 2009) (internal citations omitted).  The case law recognizes two classes of seizures, arrests and temporary detentions, and the justification needed for each is qualitatively different, the first requiring probable cause and the second reasonable suspicion.  See id. (internal citations omitted).  Since the line between temporary detentions and de facto arrests is often blurred, an inquiring court must determine

Civ. No. 08-1815(PG)                                             Page 13

whether the police officer's initial action was justified and, if so,
whether subsequent more coercive actions were justified by the developing
circumstances.  Id. (internal citations omitted).

     At this procedural juncture, we can rule out Plaintiff's unlawful
detention claim.  Taking the Complaint's facts as true, Defendants did seize
Plaintiff by physically as well as verbally restricting his liberty when
they announced the order to disperse but effectively blocked all means of
escape.  However, contrary to Plaintiff's conclusory statements that he was
not trespassing on private property, we find that indeed he was and that,
therefore, Defendants had both probable cause to arrest as well as
reasonable suspicion to temporarily detain him for violating Puerto Rico's
criminal laws against trespass.  See P.R. Laws Ann. tit. 33, § 4283 (2006)
(allowing in trespass cases up to six months imprisonment, a fine of $5,000,
or both at the court's discretion).

     Finding that Defendants had cause to seize Plaintiff, we dismiss
Plaintiff's unlawful detention claim with prejudice.  Taking the facts
alleged in the Complaint as true and drawing reasonable inferences in
Plaintiff's favor, we cannot discern under any set of circumstances a
plausible claim of unlawful detention or seizure, as the police had legal
cause to detain or arrest all those who trespassed on the Paseo Caribe's
parking building in violation of Puerto Rico's criminal laws.

          **C. Fourth Amendment - Excessive Force**

     At the heart of Plaintiff's allegations of constitutional deprivations
is a Fourth Amendment claim of freedom from excessive, unreasonable, and
unjustified force against his person.  The standard for assessing claims of
excessive force is as follows:

> To establish a Fourth Amendment violation based on excessive force, a plaintiff must show that the defendant officer employed force that was unreasonable under the circumstances. Whether the force used to effect a particular seizure is reasonable "must be judged from the perspective of the reasonable officer on the scene, rather than with the 20/20 vision of hindsight." The reasonableness inquiry is objective, to be determined "in light of the facts and circumstances confronting [the officers], without regard to their underlying intent or motivation." There must be "careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.

Jennings v. Jones, 499 F.3d 2, 11 (1st Cir. 2007) (quoting Graham v. Connor, 490 U.S. 386, 396-97)(internal citations omitted)). The First Circuit Court of Appeals has also noted that the calculus of reasonableness must make allowances for the need of police officers to make split second judgments in circumstances that are tense, uncertain and rapidly evolving about the amount of force that is necessary for a particular situation. Parker v. Gerrish, 547 F.3d 1, 9 (1st Cir. 2008) (internal citations and quotation marks omitted)).

Under this standard, Plaintiff has pled sufficient facts to make out a cognizable claim of excessive force under the Fourth Amendment. Taking Plaintiff's facts as true, the circumstances confronting the officers was that of protestors resisting a police order to leave the building by sitting down on the floor "peacefully." (Compl. ¶ 37.) Even assuming they committed a crime of trespass, the severity of a non-threatening act of protest by sitting on the ground in resistance of police orders would never warrant an indiscriminate beating. There was no immediate threat to the safety of the officers or others and no active resisting of arrest or attempt to evade arrest by flight.[4] There was simply no justification for the amount of

---

[4] Neither Plaintiff or Defendants ever submit that Plaintiff was placed under arrest or that physical force was required to place him under arrest.

force allegedly employed in this situation: hurtful, indiscriminate, and
with no other apparent object but to inflict pain.  We deny Defendants'
request to dismiss Plaintiff's excessive force claim and allow it to move
forward.


        **D. Substantive Due Process**


        Plaintiff argues, in essence, that to "resort to bone-breaking force
over the rule of law would surely be sufficiently 'conscience-showing' to
amount to a deprivation of the rights to substantive due process under
either the Fifth or Fourteenth Amendments, rather than, or in addition to,
any Fourth Amendment violation. . . ." (Opp. to Mot. Dismiss 14-15.)  The
Supreme Court, however, has held that "because the Fourth Amendment provides
an explicit textual source of constitutional protection against this sort of
physically-intrusive governmental conduct, that Amendment, not the more
generalized notion of 'substantive due process,' must be the guide for
analyzing these claims." <u>Graham v. Connor</u>, 490 U.S. 386, 395 (1989).
"[*A*]*ll* claims that law enforcement officers have used excessive force -
deadly or not - in the course of . . . [the] 'seizure' of a free citizen
should be analyzed under the Fourth Amendment and its 'reasonableness'
standard, rather than under a 'substantive due process' approach." <u>Id.</u>
(emphasis in original).

        The First Circuit, following the Supreme Court's holding in <u>Graham</u>,
has rejected alleged deprivations of substantive due process rights based on
excessive force.  <u>See</u> <u>Estate of Bennett v. Wainright</u>, 548 F.3d 155, 163 (1st
Cir. 2008) ("[T]his is in essence an excessive force claim that should be -
and is - brought under the Fourth Amendment.")); <u>Torres-Rivera v. O'Neill</u>
<u>Cancel</u>, 406 F.3d 43, 51-53 (1st Cir. 2005) (holding that an excessive force

claim is governed by the Fourth Amendment's "objectively reasonable" standard rather than the Fourteenth Amendment's "shock the conscience" standard)); see also Colon-Andino, 634 F. Supp. 2d at 236 (United States District of Puerto Rico case dismissing the plaintiff's due process claim appropriately controlled by the Fourth Amendment)).  As an alternative constitutional claim is available here under the Fourth Amendment, Plaintiff's substantive due process claim cannot advance.  See Estate of Bennett, 548 F.3d at 163 (citing Coyne v. Cronin, 386 F.3d 280, 287 (1st Cir. 2004); Pagan v. Calderon, 448 F.3d 16, 34 (1st Cir. 2006)).


   **E. Qualified Immunity**


   Defendants argue that even if the Court finds that they have violated Plaintiff's constitutional rights, they are entitled to qualified immunity from liability.  The doctrine of qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Guillemard-Ginorio v. Contreras-Gomez, 585 F.3d 508, 526 (1st Cir. 2009) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)).  The qualified immunity test takes the form of a two-part inquiry: (1) the Court must decide whether the facts a plaintiff has shown make out a violation of a constitutional right, and (2) if the plaintiff has satisfied the first step, the court must decide whether the right at issue was clearly established at the time of defendant's alleged misconduct.  See id.

   The First Circuit recently explained that "the clearly established step is itself composed of two parts, which require the court to decide (1) whether the contours of the right [were] sufficiently clear that a

reasonable officer would understand that what he is doing violates that
right, and (2) whether in the specific context of the case, a reasonable
defendant would have understood that his conduct violated the plaintiff['s]
constitutional rights." <u>Mosher v. Nelson</u>, 589 F.3d 488, 493 (1st Cir. 2009)
(<u>quoting</u> <u>Maldonado v. Fontanes</u>, 568 F.3d 263, 269 (2009) (internal quotation
marks omitted)).[5]  The first part addresses the status of the law at the
time of the event in question, focusing on the clarity of the standard with
respect to the asserted constitutional right.  <u>Id.</u>  The second part
addresses the specific factual context of the case to determine whether a
reasonable official in the defendant's place would have understood that his
conduct violated the asserted constitutional right. <u>Id.</u>

     In conducting our qualified immunity analysis, we take the Plaintiff's
facts as true for purposes of determining whether Defendants have violated
his constitutional rights and whether the right at issue was clearly
established at the time of the defendant's alleged misconduct.  As discussed
*supra*, Plaintiff has pled a plausible excessive force claim and thus a
cognizable violation of his constitutional right to be free from
unreasonable seizures under the Fourth Amendment, satisfying the first prong
of the immunity inquiry.

     Under the second prong, first "[w]e consider whether existing case law
was clearly established so as to give the defendants fair warning that their
conduct violated the plaintiff's constitutional rights." <u>Guillemard-Ginorio</u>,
585 F.3d at 527 (internal citations and quotation marks omitted).  The law

---

[5] The First Circuit in <u>Mosher</u> noted that the recent Supreme Court decision in <u>Pearson v. Callahan</u>, 129 S. Ct. 808, 818-19 (2009), gave courts discretion in addressing the "clearly established" step without first determining whether a constitutional right had been violated.  In this case, we do not exercise this discretion given that the facts, when taken as true, make out a clear violation of Plaintiff's right to be free from excessive force during a seizure.  However, we aim to follow First Circuit precedent and keep abreast of the appellate court's recent decisions.  Therefore, we extend our qualified immunity analysis under the second prong pursuant to the First Circuit's opinion in <u>Mosher</u>.

is considered clearly established either if courts have previously ruled
that materially similar conduct was unconstitutional, or if a general
constitutional rule already identified in the decisional law applies with
obvious clarity to the specific conduct at issue.  Id. (internal citations
and quotation marks omitted).  We find that the case law preventing police
officers from indiscriminately beating non-threatening individuals, whether
or not they were trespassing on private property, is clearly established.
Defendants were given fair warning that inflicting pain and injury that is
far from necessary and nowhere near what is required to control a peaceful
protest is obviously unlawful and in this case unconstitutional.

     The Sixth Circuit Court of Appeals in Jones v. City of Cincinnati, 521
F.3d 555, denied a qualified immunity defense based on the plaintiff's
allegations that officers beat him with batons without giving him a chance
to comply with their orders even though he presented no danger to any
property or persons. See Jones, 521 F.3d at 559.  First Circuit case law has
affirmed the denial of qualified immunity based on less compelling examples
of unreasonable force applied to individuals suspected of criminal conduct.
For example, in Jennings v. Jones, 499 F.3d 2 (1st Cir. 2007), the court
found that a police officer had used excessive force when he increased
pressure to the plaintiff's ankle several seconds after he stopped resisting
an arrest and after he stated that it was hurting a previously injured
ankle. 499 F.3d at 11.  In Morelli v. Webster, 552 F.3d 12 (1st Cir. 2009),
the court also found that a police officer had applied excessive force when
he yanked the arm of an unarmed and non-violent person, suspected only of
stealing $20, and pinned her against a wall for three to four minutes with
sufficient force to tear her rotator cuff. 552 F.3d at 24.  Plaintiff's
version of the facts in this case make it clear that he was not a risk of
flight or to the officer's safety, yet they struck him with metal-pointed

Civ. No. 08-1815(PG)                                              Page 19

batons and kicked him, resulting in a bone fracture.  As in <u>Morelli</u>, here
the "plaintiff's version of the relevant facts places [the officers']
actions outside the universe of protected mistakes." <u>Id.</u>

In <u>Jennings</u>, the First Circuit observed that the defendant officer's
conduct was "such an obvious violation of the Fourth Amendment's general
prohibition on unreasonable force that a reasonable officer would not have
required prior case law on point to be on notice that his conduct was
unlawful." 499 F.3d at 17.  If there is any doubt about whether the case law
is directly on point with the factual scenario presented in the case at bar,
the same observation applies because the unlawfulness of the conduct is
readily apparent even without clarifying case law.  <u>See</u> <u>id.</u> (citing numerous
appellate decisions denying a qualified immunity defense without identifying
a closely analogous case when the use of force is so plainly excessive or
obvious); <u>see also</u> <u>Mosher</u>, 589 F.3d at 493 ("Clearly established law does
not depend on identical circumstances repeating themselves. Instead, notable
factual differences may exist between prior cases and the circumstances at
hand as long as the state of the law at the time gave the defendant 'fair
warning' that his action or inaction was unconstitutional.").

Just as the case law preventing police officers from indiscriminately
beating non-threatening individuals is clearly established, the specific
factual context of this case clearly shows that a reasonable official in the
defendants' position would have understood that his conduct violated
Plaintiff's constitutional rights.  Defendants, as trained police officers,
must have known that beating or encouraging the beating of a non-threatening
individual suspected of non-violent criminal conduct for no apparent reason
exceeds the bounds of the lawful use of force.  Plaintiff's facts paint a
clear picture of abuse by police officers bent on inflicting injury upon
non-threatening protestors.  A reasonable officer would have minimized the

use of force to that which was necessary to disperse or arrest the protestors without inflicting unnecessary harm.  A reasonable officer would have understood that beating an individual with a baton is reserved for limited circumstances when such degree of force is rendered reasonably necessary.

Defendants are not entitled to qualified immunity from liability at this point in the litigation.  However, they are free to raise this defense again after the factual record is more fully developed.  Then, we will be better able to discern the individual officers' participation in employing excessive force against Plaintiff and whether they each acted reasonably in the specific factual context of this case.

### F. Supplemental Claims

Defendants argue that the Court should dismiss the plaintiff's Puerto Rico constitutional and state law claims when all federal claims have been dismissed.  Plaintiff has pled a plausible Fourth Amendment claim of excessive use of force under section 1983.  Federal claims remain, therefore, and supplemental jurisdiction over the state law claims remains proper.

### IV. Conclusion

For the foregoing reasons, the Court **GRANTS in part and DENIES in part** Defendants' Motion to Dismiss.  Plaintiff's section 1983 claims pursuant to the Fifth and Fourteenth Amendments for substantive due process violations are hereby **DISMISSED WITH PREJUDICE.** Plaintiff's

Civ. No. 08-1815(PG)                                                    Page 21

section 1983 claim of unlawful detention pursuant to the Fourth Amendment is also **DISMISSED WITH PREJUDICE.**  Defendants' request to dismiss Plaintiff's section 1983 claim of excessive force pursuant to the Fourth Amendment in their individual capacity for money damages is **DENIED.** Defendants request to dismiss Plaintiff's Puerto Rico constitutional and state law claims is also **DENIED.**

        **IT IS SO ORDERED.**

        In San Juan, Puerto Rico, January 26, 2010.


                                        S/ JUAN M. PÉREZ-GIMÉNEZ
                                        JUAN M. PÉREZ-GIMÉNEZ
                                        UNITED STATES DISTRICT JUDGE